Kenneth Lee BROOKS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14040.

Court of Criminal Appeals of Oklahoma.

Feb. 21, 1968.

Don Anderson, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Kenneth Lee Brooks, hereinafter referred to as defendant, was charged by information, along with one Patricia DeAnn Williamson, in the District Court of Oklahoma County, with the crime of Illegal Possession of Narcotic Drugs. The more specific allegation of the Information was that on September 14, 1963, the defendant and his companion, had fifteen morphine tablets in their possession and under their control.

The charges were dismissed as to the defendant's co-defendant and the defendant came on for trial by a jury on December 6, 1965. On December 7th the jury re-

turned a verdict finding the defendant guilty as charged in the Information and assessing his punishment at imprisonment for five years in the state penitentiary. The trial court overruled defendant's Motion for New Trial on December 21, 1965, and on that same date entered judgment and sentence in accordance with the verdict of the jury. The defendant was permitted to appeal as a pauper after his retained trial attorney was permitted to withdraw as counsel of record following the trial. The public defender was appointed by the trial court to lodge the appeal in this Court. Same was not lodged within the time provided by law, but this Court, for good cause shown, has permitted a delayed appeal of the conviction and sentence.

For the purposes of this appeal we need be concerned only with the testimony of Jerry Legg, the arresting officer, and Jon Reininger, at the time a chemist for the State Bureau of Investigation, who analyzed the tablets used as evidence against the defendant at trial.

The officer testified that at about 1:45 p.m. on the date in question, he was on duty as a patrolman with the Oklahoma City Police Department and was cruising in the 1200 block of Northwest 8th Street. He noticed the defendant and a female companion walking down the driveway of a residence in this block and he further noticed the defendant, upon seeing the police car, throw an article to the ground. The officer got out of his patrol car and talked with the two subjects briefly, at which time he observed a small cellophane package on the ground, same containing tablets which to him, from his past experience and training, appeared to be morphine tablets. The officer did not question the subjects further, nor did he retrieve the package from the ground at that time. Instead, he got back into his car and drove around the block. When he came back around the block he observed the woman get out of a car being driven by the defendant and go and pick up the cellophane package from the sidewalk. Upon seeing the officer ap-

proach again, the woman threw the package beneath another car. The officer retrieved the same and placed the defendant and the woman under arrest and brought them to the police station.

Later it was determined that said cellophane package contained about fifteen tablets of some kind. These were taken to the chemist, Jon Reininger, to be analyzed, and his testimony will appear more fully later as part of one of the questions with which this appeal is concerned.

This was the State's case. The defendant did not elect to take the stand or to present any evidence. He rested his case at the time the State rested, after demurring to the State's evidence.

■ As his first assignment of error, defendant urges that the evidence was insufficient to establish the substance as a narcotic. In this connection he complains of the testimony of Jon Reininger, state chemist, appearing at pages 22–23 of the casemade:

"A. Officer Mize and Smith came to my laboratory at 3400 North Eastern on September 19, 1963, shortly before noon, as I remember, I'm not sure about the time, but I think shortly noon, and they had in their possession a brown manila envelope containing some 13 or 15 tablets that they wanted tested.

Q. All right, sir. Did you receive those tablets?

A. Yes, I did.

Q. And did you submit them to a chemical test for the purpose of analysis?

A. Yes, sir, I did.

Q. And what were the results?

A. Well, the tablets, I selected one tablet at random, and the tablets conformed with the U.S. formula capacity, Volume 15, that is the latest volume we have for morphine and color tests that we use."

Counsel for defendant contends that this testimony of the chemist was insufficient to show that the defendant was in possession of a narcotic drug.

The State, in its brief, points out that the court in its Instruction No. 5 gave the following definition of narcotic drugs:

"The laws of the State of Oklahoma further provide:

'Narcotic Drugs' mean: Coca leaves, or opium, or any compound, salt, or derivative preparation of coca leaves or opium, including any synthetic compound whatever which has similar action or effect upon the human body, whether or not they are known or described by copyrighted or chemical names.

'Opium' includes *morphine*, codeine, and heroin, and any compound, manufacture, salt, derivative, mixture, or preparation of opium, but does not include apomorphine or any of its salts." [Emphasis added.]

The State submits that "a reading of the chemist's testimony will lead to only one common-sense conclusion of its meaning, and that meaning is that the chemist selected one tablet at random from among the tablets taken from the defendant's possession and, brought to the chemist by the police officers for analysis. He subjected this tablet to certain tests and found as a result of such tests that the tablet contained certain *substances in sufficient volume to establish it to be morphine*."

■ We agree with the State's contention that this testimony, along with the circumstantial evidence consisting of the arresting officer's testimony and the actions of the defendant and his companion in throwing the tablets to the ground on two occasions when the officer approached them, was sufficient to prove the charge of illegal possession of narcotic drugs, and are of the opinion that this assignment of error is without merit.

Defendant lastly contends that "evidence of needle marks should not have been admitted." He urges that Officer Legg should never have been permitted to testify that both defendant and his companion "had numerous needle marks on their arms," and that this put defendant's

character in evidence when he had not made it an issue, and this is error.

It is the State's position that such testimony was relevant to the issues of the trial. In this connection the State cites the first syllabus of the case of Carter v. State, Okl. Cr., 376 P.2d 351, as follows:

"In a criminal prosecution, any legal evidence from which the jury may adduce guilt or innocence is admissible if, when taken with other evidence in the case, its relevancy appears, and the rejection of competent testimony offered by defendant constitutes prejudicial error."

As further clarification, the State cites 22A C.J.S. Criminal Law § 600, p. 388:

"Broadly stated, the test of relevancy of proferred evidence is whether it tends to cast any light on the crime charged, or whether the proferred evidence is connected with the crime charged, or whether it tends to sustain or impeach a pertinent hypothesis, or whether it proves or disproves, or tends to prove or disprove, the crime charged or any fact material to the issue, or tends to make the proposition at issue more or less probable.

More precisely, any legal evidence is admissible if, and only if, it logically or reasonably tends to prove or disprove a material fact in issue, or to make such such fact more or less probable, or if it affords the basis of a logical or reasonable inference or presumption as to the existence of a material fact in issue, * * *."

We are of the opinion that the testimony of the arresting officer as to the appearance of the defendant and the "needle marks" on his person, was a circumstance further tending to connect the defendant with the morphine, since it is a matter of common knowledge that injection by hypodermic needle is one method of administering narcotic drugs, including morphine, which are usually dissolved in liquid form. This circumstance characterizes the intent of the defendant in having in his possession the morphine pills.

We are of the opinion that this assignment of error is also without merit, and that the judgment and sentence appealed from should be, and the same is hereby affirmed.

BRETT, J., concurs.